# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## CHARLESTON DIVISION

ELI WAYNE FREELAND,

                Plaintiff,

v.                                    CIVIL ACTION NO.   2:14-cv-29445

DAVID BALLARD, et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Defendants David Ballard and Steven Caudill's Motion to Dismiss Amended Complaint ("the Motion to Dismiss").[1]   (ECF No. 33.)   For the reasons discussed herein, the Court **GRANTS** the Motion to Dismiss.

## I.  BACKGROUND

This case arises out of two incidents that occurred during Plaintiff's incarceration at Mount Olive Correctional Complex ("MOCC").   The action is brought against David Ballard, Warden

---

[1] Defendants David Ballard and Steven Caudill previously filed a Motion to Dismiss the original Complaint alongside former Defendant Teresa Gregory on March 15, 2016.   (ECF No. 26.)   Plaintiff filed his Amended Complaint on March 29, 2016, in which Teresa Gregory was no longer a named Defendant.   (ECF No. 32.)   Defendants Ballard and Caudill then filed the current motion on April 7, 2016.   (ECF No. 33.)   Thus, the former motion, (ECF No. 26), is **DENIED AS MOOT**.

      Further, Defendant Jerry Walton filed a Notice of Joinder in Defendants David Ballard and Steven Caudill's Motion to Dismiss Amended Complaint on April 27, 2016.   (ECF No. 40.)   He seeks to join in the Motion to Dismiss "as it relates to Plaintiff's claims for violation of the ADA and Rehabilitation Act, Plaintiff's failure to exhaust administrative remedies, Plaintiff's State Constitutional law claims, and Plaintiff's claim for injunctive relief."   (*Id.* at 1.)   This opinion dismisses Counts I and II of the Amended Complaint as to all Defendants and dismisses all other claims related to the March 4, 2014, incident for failure to exhaust administrative remedies.   For the purposes of the current opinion, the Court does not reach the substance of Plaintiff's state constitutional law claims or request for injunctive relief, and those claims remain pending against Defendant Walton.   Therefore, as far as Defendant Walton's notice of joinder can be construed as a motion, it is **GRANTED IN PART** and **DENIED IN PART**.

of MOCC; Steven Caudill, acting Captain and Segregation Commander of the Quilliams I Unit; and Jerry Walton, David Mon, and Daniel Cherry, correctional officers at MOCC.   (*See* ECF No. 32 at 3–4, ¶¶ 6–8.)   The Amended Complaint alleges that, on or about March 4, 2014, "defendant correctional officers harassed Plaintiff . . . , were deliberately indifferent to his serious mental health needs, and wrongfully used excessive amounts of . . . an extreme version of . . . pepper spray, on [Plaintiff] . . . as punishment for requesting mental health intervention services . . . ." (*Id.* at 1, ¶ 2.)   The Amended Complaint further avers that Defendants Ballard and Caudill, who are supervisors at MOCC, "failed to take reasonable measures to protect Mr. Freeland from defendant correctional officers . . . ."   (*Id.* at 2, ¶ 3.)   Plaintiff claims that this led to a second incident on or about March 21, 2014, when Defendant Walton allegedly poured "burning hot coffee" onto Plaintiff's feet "in a malicious, sadistic, and excessive response to Mr. Freeland's non-threatening laughter for the purposes of punishing and causing harm to Mr. Freeland and without prior warning, direction, or command."   (*Id.* at 15, ¶¶ 74–77.)   Plaintiff's laughter was a reaction to Defendant Walton allegedly "spill[ing] one of the two hot coffee pitchers he was carrying" while serving dinner that evening.   (*See id.* at 14, ¶¶ 71–73.)

Plaintiff filed his original Complaint on December 5, 2014, (ECF No. 2), before filing an Amended Complaint on March 29, 2016.   (ECF No. 32.)   The Amended Complaint alleges six counts: (I) violations of the Americans with Disabilities Act ("ADA"), (*id.* at 22–25, ¶¶ 112–129); (II) violations of the Rehabilitation Act ("Rehab Act"), (*id.* at 25–27, ¶¶ 130–140); (III) violations of the United States Constitution under 42 U.S.C. § 1983, (*id.* at 27–34, ¶¶ 141–177); (IV) violations of the West Virginia Constitution, (*id.* at 34–38, ¶¶ 178–196); (V) assault and battery, (*id.* at 38–40, ¶¶ 197–210); and (VI) intentional infliction of emotional distress ("IIED"), (*id.* at

2

40–42, ¶¶ 211–223).   Plaintiff seeks damages, including punitive damages, attorneys' fees and costs, and injunctive relief in the forms of requiring Defendants to comply with the ADA, ordering Plaintiff's release from segregation and transfer to MOCC's mental health unit, enjoining Defendant Walton from assignment to any unit where Plaintiff is housed, ordering Defendants to cease unconstitutional policies and practices, and ordering additional training and education for MOCC staff.   (*Id.* at 25, ¶ 127; 33, ¶¶ 173–175; 43.)

Defendants Ballard and Caudill filed the current Motion to Dismiss and memorandum in support of their motion on April 7, 2016.   (ECF Nos. 33, 34.)   Plaintiff responded to the Motion to Dismiss on April 25, 2016,[2] (ECF No. 39), and Defendants Ballard and Caudill filed their reply on April 29, 2016.   (ECF No. 41.)   The Motion to Dismiss is fully briefed and ripe for adjudication.

## II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 8(a), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   *See Erickson v. Pardus*, 551 U.S. 89, 93–94 (2007).   The rule requires the plaintiff to allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim.   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007).   A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, and the factual allegations must be taken as true and construed in the light most favorable to the plaintiff.   *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994).   Consequently, a motion to dismiss should be granted

---

[2] Plaintiff filed a Motion to Exceed Page Limit for Response in Opposition to Defendants Ballard's [sic] and Caudill's Motion to Dismiss Amended Complaint on May 2, 2016.   (ECF No. 42.)   Despite the fact that Plaintiff did not timely file the motion in accordance with Local Rule of Civil Procedure 7.1(a)(2), the Court **GRANTS** the motion for good cause shown.

3

only if, after accepting all well-pleaded allegations contained in the complaint as true, the plaintiff fails to allege enough facts to state a cognizable legal claim that is plausible on its face. *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level[,]" and if a plaintiff does not "nudge" his claim "across the line from conceivable to plausible[,]" then the complaint should be dismissed. *Id.* at 555, 570. "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001) (citing *DM Research v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)).

## III.   DISCUSSION

Plaintiff's Amended Complaint alleges six claims for relief. Defendants Ballard and Caudill first attack all six counts in the Amended Complaint as "threadbare recitals of the elements of a cause of action supported by conclusory allegation," which "are not entitled to the presumption of truth." (*See* ECF No. 34 at 3–5.) Next, Defendants Ballard and Caudill claim that they are immune from suit under the doctrine of qualified immunity. (*See id.* at 5–7.) The memorandum supporting the Motion to Dismiss then attacks the ADA and Rehab Act claims substantively before arguing that those and other claims should be dismissed because Plaintiff failed to exhaust his administrative remedies. (*See id.* at 7–10.) Defendants Ballard and Caudill further argue that Plaintiff's supervisor liability claim has an insufficient basis, (*see id.* at 10–14), Plaintiff's State Constitution claims are not actionable, (*see id.* at 14–15), and Plaintiff's burden to establish injunctive relief has not been met. (*See id.* at 15–16.) The Court will first address Defendants Ballard and Caudill's claim that Plaintiff failed to exhaust his administrative remedies before turning to the issue of qualified immunity.

4

### A.   Failure to Exhaust Administrative Remedies

Incarcerated individuals may not bring suits in federal court regarding prison conditions and mistreatment without first exhausting all available administrative remedies.   *See* 42 U.S.C. 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.").   In West Virginia, the State's version of the federal Prisoner Litigation Reform Act ("PLRA") outlines the procedures that must be followed to exhaust an ordinary administrative remedy.   The West Virginia PLRA defines an "ordinary administrative remedy" as "a formal administrative process by which an inmate submits a grievance seeking redress or presenting concerns regarding any general or particular aspect of prison life which does not involve violence . . . An ordinary administrative remedy includes, but is not limited to, . . . staff treatment or some other alleged wrong."   W. Va. Code § 25-1A-2(a).   Under this statute, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been exhausted."   § 25-1A-2(c).   Exhaustion of an ordinary administrative remedy is satisfied upon a showing of the following:

> An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures, has been accepted, fully appealed and has received a final decision from the Commissioner of Corrections or the Commissioner's designee, or the Executive Director of the Regional Jail Authority, or the Director's designee.

§ 25-1A-2(d).

If the allegation involves violence, then the administrative remedy "is considered exhausted when the inmate's grievance has complied with duly promulgated rules and regulations

5

regarding inmate grievance procedures for imminent violence . . . ."   *See* § 25-1A-2a(g); *see also*
*Baker v. Hammons*, No. 2:15-cv-13849, 2016 WL 538481, at *3 (S.D. W.Va. Feb. 9, 2016) ("Put
simply, section 25-1A-2a of the West Virginia Code requires an inmate to exhaust his or her
administrative remedies even in cases involving violence . . . albeit under special grievance
procedures.").   The State Division of Corrections issued a rule providing that "[a]n inmate
alleging that he/she is subject to violence which is not imminent may file a grievance to his/her
unit manager who shall in return cause the allegations to be reviewed . . . Except for as set forth in
the above special procedures, a grievance alleging violence and or imminent violence shall follow
the procedures for ordinary administrative remedies."   *See* W. Va. Code R. § 90-9-8.7, 90-9-8.9.
Ultimately, "no inmate shall be prevented from . . . bringing a civil or criminal action alleging
violence . . . after exhaustion of administrative remedies."   *See* § 25-1A-2a(i).

The federal PLRA contains an "'invigorated' exhaustion provision" requiring prisoners to
exhaust all available administrative remedies before bringing a case in federal court.   *See* 42
U.S.C. 1997e; *Woodford v. Ngo*, 548 U.S. 81, 84 (2006) (citation omitted).   Congress crafted the
PLRA in response to an "ever-growing number of prison-condition lawsuits that were threatening
to overwhelm the capacity of the federal judiciary."   *Green v. Young*, 454 F.3d 405, 406 (4th Cir.
2006) (quoting *Anderson v. XYZ Correctional Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir.
2005)).   The PLRA created "three major hurdles in the path of prisoners seeking to challenge the
conditions of their confinement," including a requirement that they "exhaust all administrative
remedies before bringing suit."   *Id.* at 405–406.

Even if West Virginia law provides for an exception to the exhaustion of administrative
remedies, it will not apply in cases brought under federal law.   The court in *Wade v. Spencer* held

6

that "a West Virginia statute exempting certain types of inmate claims from the exhaustion requirement should [not] further exempt plaintiff, a § 1983 claimant, from the federal obligation to exhaust." No. 2:12–CV–86, 2014 WL 51235, at *3 (N.D. W.Va. Jan. 7, 2014) (citing *Short v. Green*, 577 F. Supp. 2d 790, 792–93 (S.D. W.Va. 2008) (noting that "it was significant that Congress did not provide for an exemption to the requirement where the applicable state scheme did not mandate exhaustion")). *See also Ruggiero v. Cty. of Orange*, 467 F.3d 170, 174 (2d Cir. 2006) ("There is no indication that Congress intended state law to govern the question or that the PLRA's exhaustion requirement should vary from state to state."). The court stated that the plaintiff was "incorrect" in arguing that "he need not exhaust his administrative remedies . . . because the West Virginia statute that provides the relevant administrative scheme does not require him to do so." *See Wade*, 2014 WL 51235, at *3. Regardless of a state's requirements, the Fourth Circuit requires exhaustion "even where the inmate claims that exhaustion would be futile." *Reynolds v. Doe*, 431 Fed. App'x 221, 222 (4th Cir. 2011) (per curiam) (citing *Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001)).

This Court has deemed Congress' intent as purposeful in not providing "an exemption to the exhaustion requirement . . . when the applicable state processes allow an inmate to immediately institute a civil action." *See, e.g.*, *Short v. Green*, 577 F. Supp. 2d at 793. The absence of such an exemption highlights the stringent exhaustion requirement of the PLRA regardless of state law. *See id.* at 793 n.4 ("The court is aware of Supreme Court precedent deferring to state law when examining *how* one exhausts a grievance . . . The court does not understand [that precedent] . . . to support the conclusion that state law governs the question of *whether* administrative remedies must be exhausted when an inmate brings suit in a federal court." (citing *Jones v. Bock*, 549 U.S. 199,

218–19 (2007)) (emphasis in original)).   Thus, "inmates in West Virginia prisons bringing claims in federal court 'must exhaust the state administrative procedures, *despite the state law exception.*'"   *Stohl v. E. Reg'l Jail*, No. 1:14CV109, 2015 WL 5304135, at *4 (N.D. W.Va. Sept. 8, 2015) (quoting *Ferrell v. Miller*, No. 5:10CV1293, 2014 WL 131067, at *3 (S.D. W. Va. Jan. 10, 2014) (emphasis added)).

The PLRA provides only one exception to the exhaustion requirement—that inmates need not exhaust unavailable remedies.[3]   *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016).   The Fourth Circuit in 2015 "adopted an unwritten 'special circumstances' exception" to the PLRA, allowing certain prisoners to file a civil action without exhausting available administrative remedies, particularly in situations "where the inmate reasonably, even though mistakenly, believed he had sufficiently exhausted his remedies."   136 S. Ct. at 1852–53, 1855.   *See Blake v. Ross*, 787 F.3d 693 (4th Cir. 2015).   The Supreme Court this past year rejected the Fourth Circuit's "freewheeling approach to exhaustion as inconsistent with the PLRA."   136 S. Ct. at 1858.   The Court reiterated that the exhaustion requirement language within § 1997e(a) is "'mandatory': An inmate 'shall' bring 'no action' (or said more conversationally, may not bring any action) absent exhaustion of available administrative remedies."   *Id.* at 1856 (citing *Woodford*, 548 U.S. at 85) (citation omitted).   As early as 2002, the Supreme Court rejected a proposal to carve out excessive-force claims . . . from the PLRA's exhaustion regime, viewing that approach too as inconsistent with the

---

[3] The *Ross* Court noted three situations when administrative remedies are considered "unavailable" to prisoners.   *See Ross v. Blake*, 136 S. Ct. 1850, 1859–60 (2016).   First, "an administrative procedure is unavailable when . . . it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates."   *Id.* at 1859 (citing *Booth v. Churner*, 532 U.S. 731, 736, 738 (2001)).   Further, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use.   In this situation, some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it."   *Id.* Lastly, an administrative procedure is unavailable "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."   *Id.* at 1860.

uncompromising statutory text." *Id.* at 1857 (citing *Porter v. Nussle*, 534 U.S. 516, 520 (2002)). Thus, "a court may not excuse a failure to exhaust" because the PLRA's mandatory exhaustion scheme "foreclos[es] judicial discretion." *Id.* at 1856–57 (citing *McNeil v. United States*, 508 U.S. 106, 111, 113 (1993)).

Once a court determines that a plaintiff is subject to the PLRA's exhaustion requirement, the analysis then turns to whether he or she has met those requirements. Claims that have not been administratively exhausted may be dismissed under the standard of Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Baker*, 2016 WL 538481, at \*2–3 (granting the West Virginia Regional Jail and Correctional Facility Authority's motion to dismiss for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) and W. Va. Code § 25-1A-2); *see also Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014) ("[W]here a failure to exhaust is clear from the face of the complaint, a defendant may successfully move to dismiss under Rule 12(b)(6) for failure to state a claim." (citing *Jones*, 549 U.S. at 215–16)); *cf. Bryant v. Rich*, 530 F.3d 1368, 1373–74 n.7 (11th Cir. 2008) ("[I]rrespective of whether the issue is reached under Rule 12(b)(1), 12(b)(6), or 56, exhaustion constitutes a preliminary issue for which no jury trial right exists . . . ."). "If a prisoner's complaint contains a mix of exhausted and unexhausted claims, the Court may not consider the unexhausted claims." *Stohl*, 2015 WL 5304135, at \* 4 (citing *Jones*, 549 U.S. at 220–21 ("As a general matter, if a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.")) (citation omitted).

"An ordinary administrative remedy is considered exhausted when the inmate's grievance complies with duly promulgated rules and regulations regarding inmate grievance procedures . . . ." W. Va. Code § 25-1A-2(d). The West Virginia Division of Corrections sets out its ordinary

inmate grievance procedures in the Code of State Regulation sections 90-9-3 through 90-9-6. "Any inmate who fails to fully and properly comply with the provisions set forth in [those rules] shall not be considered to have taken full advantage of administrative remedies afforded him/her and therefore has not exhausted administrative remedies."   W. Va. Code R. § 90-9-3.4.   First, an inmate may file a grievance using forms provided by the prison "within fifteen (15) days of any occurrence that would cause him/her to file a grievance."   § 90-9-4.1.   Only one issue or complaint may be grieved per form, and the inmate must submit it to his or her unit manager.   § 90-9-4.2, 90-9-4.3.   The unit manager will return an answer to the grievance back to the inmate within five days.   § 90-9-4.5.   Next, the inmate may appeal the unit manager's response "to the Warden/Administrator within five (5) days from delivery of the response to his/her grievance" using the same form submitted to the unit manager.   § 90-9-5.1.   "The Warden/Administrator shall respond to the appeal . . . within five (5) days."   § 90-9-5.4.   Finally, the inmate may appeal the warden's response "to the Commissioner of the Division of Corrections within five (5) days after he/she receives the Warden/Administrator's response . . . using the same form . . . ."   § 90-9-6.1.   "*Only one grievance per envelope shall be permitted* . . . [S]ubmission of multiple grievances . . . shall be grounds for rejection of the entire mailing . . . ."   *Id.* (emphasis in original). "If a grievance has not been properly submitted through any level by an inmate, it shall be rejected. A rejected grievance does not exhaust the grievance process or that step of the process."   § 90-9-6.4.

Defendants Ballard and Caudill state in their memorandum in support of the Motion to Dismiss that Plaintiff's five grievances related to the March 4, 2014, incident "were rejected by the Commissioner for Plaintiff's failure to follow the procedures in § 90-9-6.1, when he placed

multiple grievances in one envelope." (ECF No. 34 at 10.) Because the grievances were rejected, Defendants argue, Plaintiff did not exhaust his administrative remedies. (*See id.*) "Such a failure is fatal to any claims he may have arising out of any of the allegations of misconduct on March 4, 2014 and should therefore be dismissed." (*Id.*) Defendants also argue that Plaintiff "never exhausted any administrative remedies in regard to his claims for violation of the ADA or the Rehabilitation Act." (*Id.*) Therefore, Defendants argue that these claims also should be dismissed.

Plaintiff's response argues that his claims brought under the West Virginia Constitution, which do not rely on 42 U.S.C. § 1983 or other federal law, are exempted from the West Virginia PLRA and are not subject to the federal PLRA's exhaustion requirement. (*See* ECF No. 39 at 7.) His justification is that his claims "involve past and imminent physical abuse," so they are not analyzed under the ordinary administrative remedy exhaustion requirements of West Virginia Code section 25-1A-2(a). (*Id.*) Additionally, Plaintiff claims that he meets "well-established exceptions" to the PLRA's exhaustion requirement, citing the Fourth Circuit's decision in *Blake v. Ross*, 787 F.3d 693 (4th Cir. 2015), *vacated and remanded*, 136 S. Ct. 1850 (2016). Defendants' reply reiterates that Plaintiff did not exhaust his administrative remedies in regard to the March 4, 2014, incident and avers that Plaintiff's argument regarding meeting any exception to the PLRA's exhaustion requirement is misplaced. (*See* ECF No. 41 at 2–3.)

Plaintiff is required to exhaust all available administrative remedies, as required by the PLRA, before bringing suit challenging prison conditions under § 1983 or any other federal law. *See* 42 U.S.C. § 1997e(a). His claims relate to violence and other mistreatment allegedly inflicted on him by Defendants Jerry Walton, David Mon, and Daniel Cherry, on two occasions. (*See* ECF

No. 32 at 7–16, ¶¶ 28–81.)   Plaintiff must follow the procedures for ordinary administrative remedies as provided by West Virginia law for each of the two incidents.[4]   To determine whether Plaintiff can survive Defendants Ballard and Caudill's Rule 12(b)(6) Motion to Dismiss, the Court does not need to look further than the grievances attached to the Amended Complaint.   *See Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004) ("Given that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting [the 12(b)(6) motion] to a motion for summary judgment.") (citation omitted); *see also Akhtar v. Mesa*, 698 F.3d 1202, 1214–15 (9th Cir. 2012) (finding that the district court erred in granting a 12(b)(6) motion to dismiss because it considered materials beyond the pleadings without giving the pro se prisoner "fair notice of the requirements for opposing a motion" where the resolution was not apparent from the pleadings).

The first incident that Plaintiff discusses in the Amended Complaint occurred on March 4, 2014.   This alleged incident followed a "panic attack or psychological breakdown" that Plaintiff supposedly experienced before hitting the emergency call button within his solitary confinement cell.   (*See* ECF No. 32 at 7, ¶ 28.)   Plaintiff avers that he requested to see mental health personnel or speak with someone who regularly ensured that Plaintiff received access to medical or mental

---

[4] Plaintiff argues in his response to Defendants' motion that his claims brought under the West Virginia Constitution meet an exception to the West Virginia PLRA exhaustion requirement because they involve violence.   (*See* ECF No. 39 at 7–8 (citing W. Va. Code § 25-1A-2(a)).)   However, Plaintiff misconstrues the effect of that particular provision. An inmate submitting claims of violence must abide by the West Virginia Division of Corrections' rules regarding allegations of violence.   *See* W. Va. Code R. § 90-9-8.   While special procedures exist for claims of imminent violence, Plaintiff here alleges claims of past violence and not imminent violence.   Except for the special procedures related to the threat of imminent violence, which do not apply here, "a grievance alleging violence . . . shall follow the procedures for ordinary administrative remedies."   § 90-9-8.9.   Therefore, Plaintiff still must abide by the exhaustion procedures required by W. Va. Code § 25-1A-2.   This Court recently discussed this issue and confirmed that a 2013 amendment to the West Virginia Code requires exhaustion of remedies before bringing a civil action even in cases involving violence.   *See Baker*, 2016 WL 538481, at *2–3 ("Put simply, section 25-1A-2a of the West Virginia Code requires an inmate to exhaust his or her administrative remedies even in cases involving violence, sexual assault, or sexual abuse . . . .").

12

health personnel before experiencing "threatening accusations" heard by other inmates, denial of access to medical or mental health services, and two unprovoked uses of Phantom Cell Buster, a device that delivers a concentrated burst of pepper spray.   (*See id.* at 7–13, ¶¶ 28–65.)

The second incident in the Complaint took place on March 21, 2014.   Plaintiff claims that Defendant Walton was serving dinner near Plaintiff's cell when Defendant Walton became angry after "spill[ing] one of the two hot coffee pitchers he was carrying."   (*See id.* at 14, ¶¶ 71–72.) Upon hearing Plaintiff laugh, Defendant Walton allegedly "took the remaining pitcher of hot coffee and poured it at the bottom of Mr. Freeland's cell door, burning Mr. Freeland's bare feet, which were uncovered at the base of the door and exposed . . . ."   (*See id.* at 15, ¶¶ 73–74.) Medical notes allegedly confirm that Plaintiff suffered second degree burns as a result of coffee poured on his feet.   (*See id.* at 15–16, ¶¶ 77–79.)

Following the March 4, 2014, incident, Plaintiff took advantage of the inmate grievance procedures and filed five grievances related to that event, which are attached as Exhibits 1 through 5 to the original Complaint.   (*See* ECF Nos. 2-2, 2-3, 2-4, 2-5, 2-6.)   These completed grievance forms detail the alleged actions of Defendants Walton, Mon, and Cherry, on March 4, 2014, (*see* ECF Nos. 2-2, 2-3, 2-4), further conduct of Defendant Walton occurring March 5, 2014, (*see* ECF No. 2-5), and destruction of Plaintiff's personal property by Defendants Walton and Mon.   (*See* ECF No. 2-6.)   The first three grievances were filed with Plaintiff's unit manager on March 5, 2014.   (*See* ECF Nos. 2-2, 2-3, 2-4.)   The fourth grievance was filed on March 6, 2014, and the fifth grievance was filed on March 9, 2014.   (*See* ECF Nos. 2-5, 2-6.)   The grievances were properly submitted on separate grievance forms to the unit manager within fifteen days of the alleged occurrence.   *See* W. Va. Code R. § 90-9-4.1–90-9-4.3.   The unit manager promptly

13

accepted and denied all of Plaintiff's grievances on March 7, 2014, and March 10, 2014, and Plaintiff subsequently appealed all five responses to the prison warden, Defendant Ballard, on March 10, 2014.  (*See* ECF Nos. 2-2, 2-3, 2-4, 2-5, 2-6.)  Plaintiff properly appealed the unit manager's response to Defendant Ballard within five days, and Defendant Ballard accepted and returned all five grievances, affirming the unit manager's responses, on March 18, 2014.[5]  (*See id.*)  Finally, Plaintiff appealed Defendant Ballard's decisions to the Commissioner of the Division of Corrections ("Commissioner").  However, Plaintiff mailed multiple grievances to the Commissioner in a single envelope in violation of West Virginia Code of State Regulation section 90-9-6.1, which provides that "[*o*]*nly one grievance per envelope shall be permitted*."  (*See* ECF Nos. 2-2, 2-3, 2-4, 2-5, 2-6.)  *See also* W. Va. Code R. § 90-9-6.1 (emphasis in original).  For this reason, the Commissioner rejected Plaintiff's grievances.  (*See* ECF Nos. 2-2, 2-3, 2-4, 2-5, 2-6.)  *See also* W. Va. Code R. § 90-9-6.1 (providing that the submission of multiple grievances in one envelope "shall be grounds for rejection of the entire mailing").

The grievances attached to Plaintiff's Complaint in this case establish both that the grievance process at MOCC was "available" within the meaning of the PLRA and that Plaintiff knew how to file an appropriate inmate grievance.  *See Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *Stohl*, 2015 WL 5304135, at *6-7.  The Court must find that Plaintiff "[did] not exhaust the grievance process" because he did not properly submit his grievances to the

---

[5] The Court notes that Defendant Ballard's response to Plaintiff's appeal occurred outside the time frame required by statute.  Section 90-9-5.4 of the West Virginia Code of State Rules provides that "[t]he Warden/Administrator shall respond to the appeal, using the grievance form, within five (5) days."  Plaintiff dated his appeal on the grievance forms as March 10, 2014, and the Warden's Office at MOCC stamped them as received on March 12, 2014.  (*See* ECF Nos. 2-2, 2-3, 2-4, 2-5, 2-6.)  Defendant Ballard's response, however, is dated March 18, 2014, which is six days after his office received the forms.  (*See id.*)  While the warden failed to timely respond to Plaintiff's appeals, Plaintiff's only remedy under law is to submit an appeal to the Commissioner of the Division of Corrections, *see* W. Va. Code R. § 90-9-6.1, which Plaintiff attempted to do.

Commissioner on appeal.   *See* § 90-9-6.4.   Because the grievance process was not exhausted in accordance with state law, Plaintiff is barred from initiating a civil action with respect to claims arising out of the incident on March 4, 2014.   *See* 42 U.S.C. § 1997e(a).   While Plaintiff argues that his "state claims are exempted from the WV PLRA exhaustion requirement," (*see* ECF No. 39 at 7–13), this is an erroneous application of law.   The Court explained earlier that allegations of past violence must exhaust ordinary administrative remedies, and there is no federal or state exemption on which Plaintiff can rely.   *See Short v. Green*, 577 F. Supp. 2d at 792–93.   Plaintiff also uses the "special circumstances" exception adopted by the Fourth Circuit in *Blake v. Ross* to argue that administrative exhaustion is not required here, but as discussed above, the Supreme Court vacated and remanded that decision this year, calling it "inconsistent with the PLRA."   *See* 136 S. Ct. at 1858.   Therefore, the Court will dismiss all claims related to the March 4, 2014, incident under Rule 12(b)(6).   *See Jones*, 549 U.S. at 215–16, 220–21.

Plaintiff also utilized the State's inmate grievance procedures to file two grievances following the March 21, 2014, incident, which are attached as Exhibits 6 and 7 to the original Complaint.   (*See* ECF Nos. 2-7, 2-8.)   The first grievance discusses the events of March 21, 2014, that led to Defendant Walton allegedly pouring hot coffee on Plaintiff's feet.   (*See* ECF No. 2-7.)   The second grievance avers that Defendant Walton discarded Plaintiff's unopened mail, and it further discusses Plaintiff's disdain for the investigative procedure and conclusions reached by prison staff.   (*See* ECF No. 2-8.)   Plaintiff dated the grievances March 21, 2014, and March 26, 2014, respectively.   (*See* ECF Nos. 2-7, 2-8.)   The grievances were properly submitted on separate grievance forms to the unit manager within fifteen days of the alleged occurrence.   *See* W. Va. Code R. § 90-9-4.1–90-9-4.3.   The unit manager accepted the grievances, but the Court

15

notes that the date of acceptance on the forms is illegible.  (*See* ECF Nos. 2-7, 2-8.)  Plaintiff appealed the unit manager's denials to the warden on March 24, 2014, and March 28, 2014, respectively.  (*See* ECF Nos. 2-7, 2-8.)  The first grievance form was accepted by Defendant Ballard on April 1, 2014, and he affirmed the unit manager's response.  (*See* ECF No. 2-7.)  Acting-warden Teresa Gregory accepted the second grievance form and affirmed the unit manager's response on April 4, 2014.  (*See* ECF No. 2-8.)  Plaintiff then appealed those decisions to the Commissioner on April 4, 2014, and April 8, 2014, respectively.  (*See* ECF Nos. 2-7, 2-8.)  Unlike the previous grievance forms that Plaintiff mailed to the Commissioner, these two grievance forms were mailed in separate envelopes.  Thus, the Commissioner accepted the two grievance forms on April 10, 2014, and April 17, 2014, affirming the warden's decisions and denying Plaintiff's grievances.  (*See* ECF Nos. 2-7, 2-8.)  Plaintiff properly exhausted his administrative remedies regarding the coffee incident that occurred on March 21, 2014, so he may bring a civil action related to this incident.  *See* 42 U.S.C. § 1997e(a).

Counts I and II of the complaint allege violations of the ADA and Rehab Act.  (*See* ECF No. 32 at 22–27, ¶¶ 112–140.)  A review of the grievance forms submitted by Plaintiff and attached to the original Complaint does not reveal any mention of alleged discrimination against Plaintiff because of his mental illnesses.  (*See* ECF Nos. 2-2, 2-3, 2-4, 2-5, 2-6, 2-7, 2-8.)  Because the face of the complaint establishes that Plaintiff did not seek an administrative remedy regarding any alleged violations of the ADA or Rehab Act, those claims will be dismissed from the current action under Rule 12(b)(6) for failure to exhaust administrative remedies.  *See* 42 U.S.C. § 1997e(a); *Short v. Greene*, 577 F. Supp. 2d at 792–93; *see also Hicks v. Lingle*, 370 Fed. App'x 497, 498 (5th Cir. 2010) (granting the defendant's 12(b)(6) motion to dismiss because "the

complaint establish[d] the inmate's failure to exhaust").   Consistent with the Supreme Court's

ruling regarding a complaint that contains a mix of exhausted and unexhausted claims, *see Jones*,

549 U.S. at 220–21, the Court finds that Counts I and II from Plaintiff's Amended Complaint,

(ECF No. 32), are **DISMISSED WITHOUT PREJUDICE**[6] as they relate to all Defendants, and

Counts III through VI at this point survive as to all Defendants insofar as the claims arise from the

March 21, 2014, incident only.   *Cf. Craft v. Olden*, 556 Fed. App'x 737, 738 (10th Cir. 2014)

(affirming the district court's order dismissing the prisoner plaintiff's civil rights action under Rule

12(b)(6), in part, for failure to exhaust administrative remedies under the PLRA).

###### B.   *Qualified Immunity*

When performing discretionary functions, government officials are "entitled to qualified

immunity from liability for civil damages to the extent that 'their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known.'"

*Rish v. Johnson*, 131 F.3d 1092, 1095 (4th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800,

818 (1982)).   It protects "all but the plainly incompetent or those who knowingly violate the law."

*Malley v. Briggs*, 475 U.S. 335, 341 (1986).   In determining whether an official is entitled to

qualified immunity, courts must satisfy two inquiries: (1) whether, after viewing the facts in the

light most favorable to the party asserting the injury, there was a deprivation of a constitutional

right; and, if so (2) whether the right was clearly established at the time of the deprivation such

that a reasonable official would understand that their conduct was unlawful.   *See Saucier v. Katz*,

533 U.S. 194, 201, 205–06 (2001).   Courts are "permitted to exercise their sound discretion in

---

[6] Dismissal without prejudice here "is appropriate because it will permit [Plaintiff] to air his grievances through use of the appropriate . . . procedure."   *See Stohl*, 2015 WL 5304135, at *7 (citation omitted).   Plaintiff may file suit on these claims later when, as earlier courts have noted, adjudication would "be facilitated by an administrative record that clarifies the contours of the controversy."   *Id.* (quoting *Porter*, 534 U.S. at 525).

deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstance in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). The first prong considers whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show [that] the officer's conduct violated a constitutional right . . . ." *Saucier*, 533 U.S. at 201. If the evidence establishes a violation of a constitutional right, the second prong assesses whether the right was "clearly established" at the time of the events at issue. *Id.* If the right was not clearly established, the qualified immunity doctrine shields a defendant officer from liability. The Fourth Circuit expanded on qualified immunity in *Waterman v. Batton*, stating that "[a]lthough the exact conduct at issue need not have been held unlawful in order for the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." 393 F.3d 471, 476 (4th Cir. 2005) (citations omitted).

In the context of supervisor liability, which Plaintiff alleges, (*see* ECF No. 32 at 16–22, ¶¶ 82–110), a plaintiff "must make several separate showings to demonstrate that [a defendant] lack[s] qualified immunity," *see Shaw v. Stroud*, 13 F.3d 791, 801 (4th Cir. 1994), because supervisors "can only be held liable for the failings of a subordinate under certain narrow circumstances." *See Green v. Beck*, 539 Fed. App'x 78, 80 (4th Cir. 2013) (citations omitted). Absent a finding that supervisory defendants are responsible for the alleged acts of a subordinate defendant, they will be afforded qualified immunity. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (noting that qualified immunity is "an *immunity from suit* rather than a mere defense to liability" (emphasis in original)). Following Fourth Circuit precedent, Plaintiff here must show, first, that it was "clearly established" at the time of the March 21, 2014, coffee incident that

18

Defendants Ballard and Caudill could be held liable for constitutional violations committed by Defendant Walton.  *See Shaw*, 13 F.3d at 801.   Next, Plaintiff needs proof that it was "clearly established" at the time that Defendants Ballard and Caudill were supervising Defendant Walton "that the degree of force that [Ballard and Caudill] knew that [Walton] was using against [Plaintiff] was unconstitutional."  *See id.*  Lastly, Plaintiff must demonstrate that a reasonable person in Defendant Ballard's or Defendant Caudill's position "would have known that [Defendant Walton's] actions were unlawful."  *See id.*   Plaintiff must make all three showings for the Court to determine that Defendants Ballard and Caudill are not entitled to qualified immunity.

Qualified immunity is a defense that may be raised at multiple phases of a case.  *See Guzman-Rivera v. Rivera-Cruz*, 98 F.3d 664, 667 (1st Cir. 1996) ("[D]efendants may raise a claim of qualified immunity at three distinct stages of the litigation.   First defendants may raise the defense on the pleadings, in a motion to dismiss . . . Second, if a defendant cannot obtain a dismissal on the pleadings, he or she may move for summary judgment . . . Finally, the defense is, of course, available at trial.").   If the requirements of qualified immunity are met, then this Court will dismiss the related claims under the standard of Federal Rule of Civil Procedure 12(b)(6).  *See Skrtich v. Thornton*, 280 F.3d 1295, 1306 (11th Cir. 2002) (confirming that "qualified immunity is a question of law that may be generally asserted (1) on a pretrial motion to dismiss under Rule 12(b)(6) for failure to state a claim; (2) as an affirmative defense in the request for judgment on the pleadings pursuant to Rule 12(c); (3) on a summary judgment motion pursuant to Rule 56(e); or (4) at trial"); *see also Workman v. Jordan*, 958 F.2d 332, 334 n.2 (10th Cir. 1992) (noting that the defendant may raise qualified immunity by way of Rule 12(b)(6) for failure to state a claim or by way of summary judgment motion) (citation omitted).   Because the qualified

immunity claim is properly raised in Defendants Ballard and Caudill's Motion to Dismiss, this Court will apply Rule 12(b)(6) to the qualified immunity analysis.

Here, there is a serious question whether Plaintiff's constitutional rights were violated when Defendant Walton allegedly poured hot coffee under Plaintiff's cell door and on his feet causing second degree burns.   (*See* ECF No. 32 at 14–16, ¶¶ 71–81.)   Plaintiff has a constitutional right to be free from the use of excessive force.   *See* U.S. Const. Amend. XVIII; *see also Hudson v. McMillian*, 503 U.S. 1, 4 (1992) (holding that the use of excessive force against a prisoner may constitute cruel and unusual punishment even if the inmate suffers no serious injury).   Viewing the alleged facts in a light most favorable to Plaintiff, the Court finds that a reasonable official would understand that Defendant Walton's conduct of pouring scalding coffee onto Plaintiff's feet may violate Plaintiff's constitutional right.   *See Hudson*, 503 U.S. at 5–6 (noting that the "unnecessary and wanton infliction of pain . . . constitutes cruel and unusual punishment forbidden by the Eighth Amendment" (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (internal citation omitted))).

Although Defendants Ballard and Caudill did not personally carry out the actions on March 21, 2014, they may still be liable under Plaintiff's theory of supervisor liability for any constitutional violations unless protected by qualified immunity.   As Defendant Walton's supervisors at MOCC, it is "clearly established" that Defendants Ballard and Caudill could be held liable for constitutional violations committed by Defendant Walton.   *See Green*, 539 Fed. App'x at 80.   The question turns to whether Defendants Ballard and Caudill knew on March 21, 2014, during their supervision of Defendant Walton "that the degree of force that [Ballard and Caudill] knew that [Walton] was using against [Plaintiff] was unconstitutional."   *See Shaw*, 13 F.3d at 801.

20

Plaintiff filed numerous grievances following the March 4, 2014, confrontation and pepper spray incident for which Plaintiff's present claims have been partially dismissed.   (*See* ECF No. 2-2, 2-3, 2-4, 2-5, 2-6.)   These grievances put Defendants Ballard and Caudill on notice that Defendant Walton allegedly engaged in the following actions:

> (1) refusal to notify mental health staff during Mr. Freeland's psychotic episode and encouragement of his self-injurious thoughts; (2) wrongful and excessive use of chemical agents against Mr. Freeland; and (3) threatening and dangerous allegations that Mr. Freeland had ratted on other inmates inside his pod, thereby exposing Mr. Freeland to serious bodily harm or death.

(ECF No. 32 at 16, ¶ 82.   *See also* ECF No. 2-2, 2-3, 2-4, 2-5, 2-6.)

The March 21, 2014, incident did not involve an action by Defendant Walton that was a continuation of or related to the allegations contained in Plaintiff's prior grievances.   On March 21, Defendant Walton is not accused of ignoring a request for mental health treatment, encouraging self-injurious thoughts, dispersing chemical agents, or announcing that Plaintiff ratted on other inmates.   If the alleged actions of March 21 involved one of these, then the Court *might* be inclined to find that Plaintiff had sufficiently alleged that Defendants Ballard and Caudill knew that Walton was using an unconstitutional degree of force on March 21, 2014.   However, Defendants Ballard and Caudill cannot be held to know that Defendant Walton would pour hot coffee on Plaintiff's feet without prior warning.   *See Robinson v. Mon*, No. 2:13–13686, 2014 WL 4161965, at *15 (S.D. W.Va. Aug. 19, 2014) (memorandum opinion) (finding that the supervisory defendants were entitled to qualified immunity because "the plaintiff's Complaint [did] not sufficiently allege[ ] any violations of clearly-established rights of the plaintiff of which a reasonable official would have known").   The alleged action was not an attempt to maintain order within the prison and, as pleaded, appears to be an individual response by Defendant Walton unrelated to any policies or

procedures set forth by Defendants Ballard or Caudill.   This is unlike the situation in *Slakan v. Porter*, where qualified immunity was unavailable to supervisory defendants because part of the plaintiff's excessive force claim involved a correctional officer's use of a high-pressure water hose at a close distance, and one of the supervisory defendants "admitted at trial that he knew of and condoned the use of high-pressure water hoses against inmates housed in one-man cells."   737 F.2d 368, 373–74 (4th Cir. 1984) ("In his official capacity, [the prison director] became aware well before the Slakan incident that hoses and tear gas were routinely being used against inmates locked in their individual cells.   He admitted specific knowledge about the seven incidents that immediately proceeded the Slakan attack and indicated that he approved of the use of force in each case.").   Whether Defendant Walton's alleged actions on March 21, 2014, were unconstitutional, they cannot be attributed to Defendants Ballard and Caudill who were unaware of the force used until after it happened.   *Cf. Farmer v. Brennan*, 511 U.S. 825 (1994) ("[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.").

The supervisory Defendants' lack of knowledge that Defendant Walton would act in the manner he allegedly did on March 21, 2014, precludes a finding that it was "clearly established" at the time Defendants Ballard and Caudill were supervising Defendant Walton that the degree of force they knew Walton was using against Plaintiff on that day was unconstitutional.   *See Shaw*, 13 F.3d at 801.   Without this finding, the Court must conclude that Defendants Ballard and Caudill are entitled to qualified immunity.   *See id.*   Rule 12(b)(6) and the relevant case law direct this Court to dismiss the remaining claims brought against Defendants Ballard and Caudill under the doctrine of qualified immunity.   *See, e.g.*, *Green*, 539 Fed. App'x at 80.   Additionally, the

Court will dismiss the remaining claims brought against Defendants Mon and Cherry pursuant to 28 U.S.C. § 1915(e)(2) for failure to state a claim on which relief may be granted.[7]   Therefore, the Court finds that Counts III through VI in the Complaint are **DISMISSED WITH PREJUDICE** insofar as they are brought against Defendants Ballard, Caudill, Mon, and Cherry, in relation to the March 21, 2014, incident.

## IV.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendants Ballard and Caudill's Motion to Dismiss.  (ECF No. 33.)   Accordingly and consistent with this opinion, the Court **DISMISSES** David Ballard, Steven Caudill, David Mon, and Daniel Cherry, from this case, and **DIRECTS** the Clerk to remove them as named Defendants in this matter.  Further, the Court

---

[7] A federal district court may dismiss an action sua sponte for a failure to state facts sufficient to constitute any cause of action.  *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . ."); *see also Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014); *Bennett v. Green*, Nos. JKB-15-3748, JKB-15-3757, 2015 WL 8757961, at *1 (D. Md. Dec. 15, 2015), *aff'd*, 647 Fed. App'x 225 (4th Cir. 2016) (noting that § 1915(e)(2) permits "sua sponte dismissal of a complaint that fails to state a claim upon which relief can be granted, which is essentially the same standard found in Federal Rule of Civil Procedure 12(b)(6)"). The majority of circuits have held that, notwithstanding the statutory power cited above, "sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts."  *See Curley v. Perry*, 246 F.3d 1278, 1287 (10th Cir. 2001) (citing *Denton v. Hernandez*, 504 U.S. 25, 34 (1992)).   Although pro se plaintiffs' pleadings are to be liberally construed, "plaintiff[']s complaint must contain factual allegations sufficient 'to raise a right to relief above the speculative level' and that 'state a claim to relief that is plausible on its face.'"  *Randolph v. U.S. Dep't of Justice Identity Theft Task Force*, No. WMN-16-36, 2016 WL 112545, at *2 (D. Md. Jan. 8, 2016), *aff'd*, 643 Fed. App'x 250 (4th Cir. 2016) (quoting *Twombly*, 550 U.S. at 555, 570) (citing *Iqbal*, 556 U.S. at 678) (dismissing plaintiff's complaint under § 1915(e)(2)(B)(ii) for failure to state a claim on which relief may be granted).

        Here, the Amended Complaint makes various allegations regarding the incident that occurred on March 21, 2014.   None of the alleged facts related to that incident, however, involves Defendants David Mon or Daniel Cherry. (*See* ECF No. 32 at 14–16, ¶¶ 71–81; 21–22, ¶¶ 107–108; 27, ¶¶ 141–142; 31–42, ¶¶ 163–196, 205–210, 216–219, 221–223.)  Rather, the claims associated with the March 21, 2014, incident are brought against Defendant Jerry Walton for his alleged act of pouring hot coffee on Plaintiff's feet and against Defendants Ballard and Caudill for "fail[ing] to take reasonable measures to protect Mr. Freeland . . . , resulting in Mr. Freeland suffering painful second-degree burns . . . on or about March 21, 2014."    (*Id.* at 2, ¶ 3.)   Counts III through VI survived the earlier analysis only as they relate to the March 21, 2014, incident, and no facts regarding that incident are alleged against Defendants Mon or Cherry.   Therefore, no claim on which relief may be granted has been pleaded in Counts III through VI against these two defendants.   *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555, 570.   As such, this Court may dismiss those claims sua sponte as brought against Defendants David Mon and Daniel Cherry for failure to state facts sufficient to constitute a cause of action.   *See* § 1915(e)(2)(B)(ii).

23

**DISMISSES WITHOUT PREJUDICE** Counts I and II from Plaintiff's Amended Complaint. (ECF No. 32.)   Counts III through VI in the Amended Complaint remain pending against Defendant Jerry Walton insofar as they relate to the incident that occurred on March 21, 2014.

      **IT IS SO ORDERED**.

      The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      January 23, 2017

THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE